Eric G. Goodrich (11050)
Jarom R. Jones (16077)
BENNETT TUELLER JOHNSON & DEERE
3165 E. Millrock Dr., Suite 500
Salt Lake City, Utah 84121
Telephone: (801) 438-2000
Fax: (801) 438-2050
Email: egoodrich@btjd.com; jjones@btjd.com

*Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BRANDIE GARDNER, individually and on behalf of all similarly situated individuals,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>SLINGSHOT TECHNOLOGY, INC.,<br><br>　　　　Defendant. | **JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT**<br><br>Case No. 2:21-cv-00531-HCN-DAO<br><br>Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Daphne A. Oberg |

Defendant Slingshot Technology, Inc. ("***Defendant***"), and Plaintiff Brandie Gardner ("***Plaintiff***"), through their respective counsel, hereby jointly move the Court to approve the settlement agreement entered into among the parties (the "***Motion to Approve Settlement***").

## <u>RELIEF SOUGHT</u>

Plaintiff and Defendant have reached a fair and reasonable agreement to settle their claims against one another. Because Plaintiff has asserted a claim against Defendant for

violation of Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, the parties request that the Court enter an order approving their settlement agreement or, alternatively, determine that approval of the settlement agreement is not necessary.

## FACTS

1.    On September 8, 2021, Plaintiff filed her Complaint (Doc. 2) against Defendant alleging that Defendant violated the Fair Labor Standards Act ("***FLSA***"), 29 U.S.C. §§ 201 *et seq.*, the Utah Payment of Wages Act ("***UPWA***"), Utah Code Ann. § 34-28-1 *et seq.*, and certain contractual obligations to Plaintiff.

2.    On February 4, 2022, Defendant filed its Motion to Dismiss (Doc. 19) seeking dismissal of Plaintiff's state law claims, including Count II (violation of the UPWA), Count III (breach of contract), and Count IV (unjust enrichment).

3.    To address the issues raised in the Motion to Dismiss, on February 18, 2022, Plaintiff filed her Second Amended Collective and Class Action Complaint and Jury Trial Demand (Doc. 20) (the "***Amended Complaint***"), which voluntarily removed Plaintiff's state law claims. As a result of the filing of the Amended Complaint, Plaintiff's only remaining cause of action in this matter is for Defendant's alleged failure to pay overtime in accordance with the requirements of the FLSA (the "***FLSA Claim***").

4.    Through her FLSA Claim, Plaintiff generally alleges that she worked for Defendant as a call agent; that her primary job duties were to answer calls and provide customer service to Defendant's clients; that she regularly worked at least 40 hours per workweek; that she worked a substantial amount of time off-the-clock for which she was not

compensated; that her pre-shift off-the clock work consisted of booting up her computer and logging into various computer programs before she was able to perform her job duties, which took up to 30 minutes per shift; and that her post-shift off-the clock work consisted of booting down her computer and logging out of various computer programs before she was able to perform her job duties, which took up to 5 minutes per shift.

5.      Defendant strenuously denies that is liable for Plaintiff's FLSA Claim. Among other things, Defendant contends that Plaintiff's claim that she spent up to 35 minutes per day performing pre-shift and post-shift off-the-clock work is wholly fabricated; that Plaintiff's claims are inconsistent with Defendant's policies and training; that Plaintiff's alleged pre-shift and post-shift off-the-clock work is inconsistent with the actions of Defendant's other employees; that Plaintiff's claims conflict with data obtained by Defendant demonstrating that Plaintiff consistently clocked in before she logged into other programs used to perform her job, or that she logged into those programs within seconds of clocking in; and, to the extent that Plaintiff performed any off-the-clock work at all, that such work was *de minimis* – one or two minutes or less – and nowhere near the 35 minutes per shift alleged in the Amended Complaint.

6.      While Plaintiff seeks in her Amended Complaint to bring her action on behalf of herself and all similarly situated current and former call agents, Plaintiff has not moved to conditionally certify this matter, this matter has not been conditionally certified as a class or collective action, and no other person has opted into Plaintiff's lawsuit.

7.      On April 4, 2022, Defendant filed a Motion for Summary Judgment (Doc. 23), in which it presented evidence that Plaintiff allegedly failed to compensate Defendant for certain benefit premium payments that Defendant made on Plaintiff's behalf while Plaintiff was employed with Defendant (the "***Benefit Payment Claim***"). *See generally* Doc. 23.

8.      If Defendant's allegations against Plaintiff are proven to be true, then Plaintiff's liability exposure to Defendant is potentially greater than Defendant's liability exposure to Plaintiff. *See id.*

9.      Following the filing of Defendant's Motion for Summary Judgment, counsel for Defendant and counsel for Plaintiff engaged in settlement negotiations, which negotiations resulted in a mutually satisfactory settlement of the parties' claims.

10.     Attached hereto as Exhibit A is the parties' Settlement Agreement and Mutual Release (the "***Agreement***") entered into between Plaintiff and Defendant.

11.     Among other things, the Agreement provides that the parties will drop their claims against one another – including Plaintiff's FLSA Claim and Defendant's Benefit Payment Claim – and enter into mutual releases without exchanging any monetary consideration between them. Plaintiff will no longer serve as a class representative for similarly situated employees and believes that obtaining a full and complete release from the Benefit Payment Claim constitutes a valuable recovery when balanced against what she would hope to obtain by pursuing the FLSA Claim.

12.     The Agreement reached is the result of documents exchanged and negotiations between the parties to resolve this matter.

13.     The Agreement was negotiated at arm's length by experienced counsel concerning bona fide disputes between their clients. Recognizing the uncertainties involved, the parties reached a settlement after negotiations and information exchange based on their assessment of the relative strengths and weaknesses of their claims and defenses, and consideration of the risks and uncertainties of ongoing litigation.

14.     The parties each deny that they are liable to one another in any amount whatsoever. Nevertheless, they recognize that each party carries a risk of liability and damages if this case proceeds. Accordingly, the parties conclude that a settlement on the terms set forth in the Agreement is fair, reasonable, and adequate, in the best interests of the parties, and that not settling is not worth the costs and risks associated with proceeding with litigation.

15.     Upon the Court's entry of an Order approving the Agreement, the parties will file a Joint Stipulation and Motion to Dismiss, and accompanying Order, with each party to bear his, her, or its own costs and attorneys' fees.

## ARGUMENT

The FLSA is intended to provide minimum protections to workers and to ensure that each employee covered by FLSA receives "a fair day's pay for a fair day's work." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). Some courts have determined that they have a duty to ensure that FLSA wage-payment settlements represent a "fair and reasonable resolution of a bona fide dispute." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). Even though the Tenth Circuit has not addressed whether parties can settle FLSA actions claiming unpaid wages without court approval, some district courts within the

Tenth Circuit have assumed that judicial approval is necessary. *See Keel v. O'Reilly Auto Enterprises, LLC*, No. 2:17-CV-667, 2018 WL 10509413, at *2 (D. Utah May 31, 2018) (citing cases).

However, other district courts have held that court approval of FLSA settlements is not required. *See, e.g., Fails v. Pathway Leasing LLC*, No. 18-CV-00308-CMA-MJW, 2018 WL 6046428, at *2–4 (D. Colo. Nov. 19, 2018) (holding that *Lynn's Food* is only correct to the extent it invalidates settlements of non-bona fide disputes, but that the FLSA does not otherwise require judicial review of settlements where there is a bona fide dispute between the parties); *Saari v. Subzero Eng'g*, No. 2:20-CV-00849-CMR, 2021 WL 4245300, at *3 (D. Utah Sept. 17, 2021) ("[A]bsent exceptional circumstances, the court need not review and provide approval for FLSA settlements.") (cleaned up)); *Hawthorn v. Fiesta Flooring, LLC*, No. 1:19-CV-00019 WJ/SCY, 2020 WL 3085921, at *2 (D.N.M. June 10, 2020) (same). In light of the uncertainty regarding whether court approval of the parties' settlement is necessary, the parties request that the Court either approve the settlement, or, alternatively, enter an order determining that approval of the settlement is not necessary.

When presented with a proposed settlement for approval, courts consider "whether the settlement 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Campbell v. C.R. England, Inc.*, No. 2:13-CV-00262, 2015 WL 5773709, at *2 (D. Utah Sept. 30, 2015) (quoting *Lynn's Food*, 679 F.2d at 1355). In assessing whether a settlement agreement is fair and reasonable, courts consider whether it was (1) fairly and honestly negotiated; (2) serious legal and factual questions place the outcome of the litigation in doubt;

(3) immediate recovery is more valuable than the possibility of a better outcome after further litigation; and (4) if the parties believe the settlement is fair and reasonable. *Id.* at *5.

Turning to the facts here, there are clearly bona fide disputes between the parties. While Plaintiff claims that she performed off-the-clock work up to 35 minutes per shift, Defendant vigorously disputes Plaintiff's claim and asserts that it is not true. Defendant further argues that substantial evidence adduced thus far demonstrates that Plaintiff consistently clocked in before performing work, and that there was no meaningful delay between the time that Plaintiff clocked in, and the time that she logged into computer programs necessary to perform her job. Beyond the parties' factual disputes over timekeeping issues, the parties also have dueling legal claims against one another. Thus, while Plaintiff claims that she was not paid overtime that she is owed under the FLSA, Defendant claims that Plaintiff owes it for benefit premium payments that it made on her behalf in the amount of $2,132.04. Plaintiff disputes the amount owed for benefit premium payments as alleged by Defendant and disputes whether the Parties formed a contract to repay the alleged benefit premium payments. Nevertheless, Defendant's claim against Plaintiff, if correct, would exceed by six times the amount of Plaintiff's claim against Defendant.

When the parties' bona fide disputes are considered, it is clear that the proposed settlement of Plaintiff's FLSA Claim is fair and reasonable. First, the settlement was fairly and honestly negotiated between the parties while both were represented by experienced counsel. There is no suggestion or evidence that either party or their counsel has behaved unfairly or dishonestly toward the other.

Second, as discussed in the fact section and the preceding paragraph, there are legal and factual questions that place the outcome of the FLSA Claim in doubt. Defendant contends it has raised viable defenses to Plaintiff's FLSA Claim. Further, if Plaintiff insisted on pressing forward with her FLSA Claim, and Defendant pursued its Benefit Payment Claim in response – either as a counterclaim or a separate lawsuit – Plaintiff would risk being exposed to a judgment that exceeds any award she would obtain on her FLSA Claim and expose her to the cost and expense of additional legal proceedings. Such an outcome would potentially place Plaintiff in a worse position than she is now.

Third, it is reasonable for Plaintiff to conclude that obtaining a release from the Benefit Payment Claim is more valuable than the mere possibility of pursuing the FLSA Claim, prevailing on it at some point in the future, and simultaneously defeating Defendant's Benefit Payment Claim against her. The outcome available to Plaintiff now appears to be better than the uncertain outcome if litigation proceeds.

Fourth and finally, the parties have both indicated through this stipulated motion that they believe that their settlement is fair and reasonable. There is no reason to believe that the parties' representations regarding their view of the Agreement is incorrect or not made in good faith. Plaintiff has also indicated that she no longer desires to pursue her FLSA Claim (or serve as a class representative) if Defendant will be pursuing its Benefit Payment Claim against her. It is fair and reasonable to respect a plaintiff's choice to voluntarily settle disputed claims that she does not want to continue litigating. Under these circumstances, it is rational, reasonable,

and appropriate for both parties to drop their claims against one another and avoid the risk and uncertainty of continued litigation.

## **CONCLUSION**

For the foregoing reasons, Plaintiff and Defendant respectfully request that this Court enter an Order approving the Agreement as a fair and reasonable resolution of bona fide disputes under the FLSA, and that this Court dismiss this suit with prejudice upon the filing of the parties' Joint Stipulation and Motion to Dismiss, with each party to bear his, her, or its own costs and attorneys' fees. Alternatively, the Parties request that the Court enter an order determining that court approval of the parties' settlement is not necessary under these circumstances.

DATED this 31st day of May 2022.

BENNETT TUELLER JOHNSON & DEERE

/s/ *Eric G. Goodrich*
Eric G. Goodrich
Jarom R. Jones
*Attorneys for Slingshot Technology, Inc.*

JOHNSON BECKER, PLLC

/s/ *Zackary S. Kaylor*
Jacob R. Rusch
Zackary S. Kaylor
*Lead attorneys for Brandie Gardner*

(*electronically signed by filing counsel with express permission*)

ROBERT J. DEBRY & ASSOCIATES

Nancy A. Mismash
*Local counsel for Brandie Gardner*

## **CERTIFICATE OF SERVICE**

I certify that on this 31st day of May 2022, I caused the foregoing document to be

filed electronically and served upon the following:

Nancy A. Mismash
ROBERT J. DEBRY & ASSOCIATES
4252 South 700 East
Salt Lake City, Utah 84107
nmismash@robertdebry.com

Jacob R. Rush
Zackary S. Kaylor
JOHNSON BECKER, PLLC
444 Cedar Street, Suite 1800
Saint Paul, MN 55101
jrusch@johnsonbecker.com
zkaylor@johnsonbecker.com

_/s/ Eric G. Goodrich_

# EXHIBIT A

# Settlement Agreement and Mutual Release

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (hereinafter "*Agreement*") is voluntarily, knowingly, and willingly entered in by and between Slingshot Technology, Inc., its parents, subsidiaries, and other corporate affiliates, and each of their respective present and former employees, officers, directors, owners, shareholders, and agents (collectively, the "*Employer*"), on the one hand, and Brandie Gardner, her heirs, executors, administrators, successors, and assigns (collectively "*Employee*"), on the other hand. Employee and the Employer are collectively referred to as the "*Parties*," and each individually referred to as a "*Party*".

WHEREAS, on September 8, 2021, Employee filed a complaint against Employer in the United States District Court for the District of Utah, Case No. 2:21-cv-00531 ("the *Lawsuit*"), alleging that Employer violated the Fair Labor Standards Act ("*FLSA*"), 29 U.S.C. §§ 201 et seq., the Utah Payment of Wages Act ("*UPWA*"), Utah Code Ann. § 34-28-1 *et seq.*, and certain contractual obligations to Employee, which Complaint was subsequently amended to only allege claims against Employer for failure to pay overtime under the FLSA.

WHEREAS, Employer denies all allegations of the Lawsuit.

WHEREAS, Employer alleges that Employee is liable to Employer for certain benefit premiums that Employer paid on Employee's behalf, for which Employee failed to reimburse Employer (the "*Benefit Payment Claim*").

WHEREAS, Employer filed a Motion for Summary Judgment in the Lawsuit asserting that the amount of its Benefit Payment Claim against Employee substantially exceeds the amount of Employee's claims against Employer, and requesting that the Court grant summary judgment on all of Employee's claims in the Lawsuit based on the doctrine of setoff.

WHEREAS, Employer has previously indicated that it intends to pursue its Benefit Payment Claim against Employee, either as a counterclaim in the Lawsuit or as a separate legal action.

WHEREAS, Employee and Employer have agreed to resolve all disputes regarding the allegations of the Lawsuit and the Benefit Payment Claim arising out of Employee's employment;

NOW THEREFORE, in consideration of the mutual covenants in this Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

A.    Settlement of Claims and Dismissal of Lawsuit

1.    Settlement. In recognition of the fact that both Parties have asserted claims against one another, including Employee's claims against Employer in the Lawsuit, and Employer's Benefit Payment Claim against Employee, the Parties agree to settle, mutually

release, and dismiss all claims they have against one another without the exchange of monetary consideration between them. The Parties acknowledge and agree that they are each receiving a benefit from settling their respective claims against one another that is commensurate with their evaluation of the value of their respective claims and their risk exposure. The benefits the Parties derive from their settlement includes avoiding the expense, risk, and uncertainty of defending against the claims that they have asserted against one another. The Parties acknowledge and agree that settling, dismissing, and releasing their respective claims against one another constitutes full and adequate consideration to support this Agreement.

2.    <u>Dismissal of Lawsuit</u>. Within a reasonable time after the Court has approved the Parties' motion to approve this Agreement, as set forth in Section C, below, the Parties shall cause their attorneys to execute a Joint Stipulation and Motion to Dismiss and Order of Dismissal, and to file the same in the Lawsuit in order to obtain an order dismissing the Lawsuit with prejudice, with each Party to bear its own attorneys' fees and costs.

B.    <u>Mutual Release</u>

1.    <u>Release by Employee</u>. In consideration of the promises and covenants contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which is hereby expressly acknowledged, Employee knowingly and voluntarily releases and forever discharges Employer, and its parent corporations, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Agreement as "***Releasees***"), of and from any and all claims which arise from or relate in any way whatsoever to Employee's employment with Employer that were, are, or could have been asserted in the Lawsuit.

a.    <u>Claims Not Released</u>. Employee is not waiving any rights she may have to: (a) her own vested accrued employee benefits under Employer's health, welfare, or retirement benefit plans as of the date Employee executes this Agreement; (b) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (c) pursue claims which by law cannot be waived by signing this Agreement; and/or (d) enforce this Agreement.

b.    <u>Governmental Agencies</u>. Nothing in this Agreement prohibits, prevents, or otherwise limits Employee from filing a charge with or participating, testifying, or assisting in any investigation, hearing, or other proceeding before any federal, state, or local government agency (e.g., EEOC, NLRB, SEC, etc.) or in any legislative or judicial proceeding nor does anything in this Agreement preclude, prohibit or limit, in any way, Employee's rights and abilities to contact, communicate with, or report unlawful conduct to federal, state, or local officials for investigation or otherwise participate in any whistleblower program administered by any such agencies. However, to the maximum extent permitted by law, Employee agrees that if such an

2

administrative claim is made, Employee shall not be entitled to recover any individual monetary relief or other individual remedies.

        c.    <u>Collective/Class Action Waiver</u>. If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Employer or any other Releasee identified in this Agreement is a party.

        2.    <u>Release by Employer</u>. In consideration of the promises and covenants contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which is hereby expressly acknowledged, Employer knowingly and voluntarily releases and forever discharges Employee of and from the Benefit Payment Claim, as well as any federal, state, or local law claims, including all claims, actions, fines, damages, penalties, sanctions, costs, or attorneys' fees, of any nature whatsoever, whether in law or equity, contract or tort, or any other form, whether now known, unknown, asserted, unasserted, foreseen, unforeseen, contingent, actual, liquidated, or unliquidated, which Employer has or may have against Employee which arise from or relate in any way whatsoever to Employee's employment, up to and including the date of Employer's execution of this Agreement.

        C.    <u>Submission to Court for Approval</u>. The Parties intend to mutually waive any and all claims they may have against one another up to and including the respective dates on which they sign this Agreement, including but not limited to, Employee's claims under the FLSA and UPWA. The Parties therefore desire that this Agreement be approved by the Court. The Parties agree that in the event this Agreement is not approved by the Court, this Agreement shall be null and void.

        D.    <u>Acknowledgments and Affirmations</u>

        1.    Employee affirms that Employee has not filed, caused to be filed, or presently is a party to any claim against Employer, except the Lawsuit.

        2.    Employee also affirms that Employee has been granted any leave to which Employee was entitled under the Family and Medical Leave Act or state or local leave or disability accommodation laws.

        3.    Employee further affirms that Employee has no known workplace injuries or occupational diseases.

        4.    Employee further affirms that Employee has not been retaliated against for reporting any allegations of wrongdoing by Employer or its officers, including any allegations of corporate fraud.

        5.    Employee agrees not to apply in the future for employment with Employer because of, among other things, irreconcilable differences with Employer.

E.    <u>Miscellaneous</u>

1.    <u>Nonadmission of Wrongdoing</u>. The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by either Party of wrongdoing or evidence of any liability or unlawful conduct of any kind.

2.    <u>Entire Agreement</u>. This Agreement, together with its exhibits and all expressly incorporated documents, contains or expressly incorporates by reference the entire agreement of the Parties with respect to the matters contemplated herein, and supersedes all prior negotiations, stipulations, and agreements.

3.    <u>Successors and Assigns</u>. This Agreement shall inure to the benefit of each of the Parties, and shall be binding on the Parties and their respective successors and assigns.

4.    <u>Independent Legal Advice</u>. Each Party to this Agreement represents, warrants and certifies that it has secured independent legal advice and consultation in connection with this Agreement and any rights it may be relinquishing, and that it has not relied upon any representation or statements by the other Party, or its agents or attorneys, in executing this Agreement other than those which are expressly made herein.

5.    <u>Interpretation of Agreement</u>. Any ambiguities or uncertainties herein, shall be equally and fairly interpreted for the benefit of and against each Party hereto, and shall further be construed and/or interpreted without reference to the identity of any Party preparing this document, it being expressly understood and agreed that each Party participated equally in the negotiation and preparation of this Agreement and has had an equal opportunity to do so.

6.    <u>Severability</u>. The provisions of this Agreement are severable, and if any provision of this Agreement is found for any reason to be invalid or unenforceable, in whole or in part, then such provision shall be deemed to be deleted only to the extent that it is found to be invalid or unenforceable. Such an invalid or unenforceable provision shall not affect the validity of the remainder of this Agreement, which shall continue in full force and effect.

7.    <u>Waiver</u>. Any waiver by any Party of any breach of any kind or character whatsoever by any other Party of the Agreement, whether such waiver be direct or implied, shall not be construed as a continuing waiver of, or consent to, any subsequent breach of this Agreement on the part of the other Party.

8.    <u>Modification</u>. This Agreement may not be modified except by an instrument in writing and signed by all the Parties hereto.

9.    <u>Cooperation</u>. Each Party agrees to execute and deliver such additional documents and instruments and to perform such additional acts as any Party may reasonably

request or as may be reasonably necessary or appropriate to effectuate, consummate, or perform any of the terms, provisions, or conditions of this Agreement.

        10.    <u>Applicable Law; Jurisdiction</u>. This Agreement shall be governed by and construed and interpreted in accordance with the laws (excluding the choice of laws rules) of the State of Utah, and any action arising out of or relating to this Agreement shall be brought and maintained in the United States District Court for the District of Utah, where the Lawsuit was filed, or in the Third Judicial District Court in and for Salt Lake County, State of Utah.

        11.    <u>Counterparts; Facsimile Signatures</u>. This Agreement may be executed in one or more counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument. Any Party's facsimile signature and any emailed copy of a Party's signature to this Agreement will be deemed a binding signature of this Agreement by such Party.

        12.    <u>Titles and Headings</u>. Titles and headings of the paragraphs and sections of this Agreement are for convenience of reference only and shall not affect the construction of any provision of this Agreement.

        13.    <u>Authorization</u>. Each individual executing this Agreement represents and warrants that such individual has been duly authorized to execute and deliver this Agreement in the capacity and for the entity set forth where such individual signs.

    The Parties have executed this Settlement Agreement on the respective dates set forth below.

BRANDIE GARDNER

SLINGSHOT TECHNOLOGY, INC.

By: *Rohan Sukhdeo*
_____

_____

Print Name: <u>Rohan Sukhdeo</u>

Date: _____

Title: <u>General Counsel</u>

Date: <u>May 24, 2022</u>

request or as may be reasonably necessary or appropriate to effectuate, consummate, or perform any of the terms, provisions, or conditions of this Agreement.

10.    Applicable Law; Jurisdiction. This Agreement shall be governed by and construed and interpreted in accordance with the laws (excluding the choice of laws rules) of the State of Utah, and any action arising out of or relating to this Agreement shall be brought and maintained in the United States District Court for the District of Utah, where the Lawsuit was filed, or in the Third Judicial District Court in and for Salt Lake County, State of Utah.

11.    Counterparts; Facsimile Signatures. This Agreement may be executed in one or more counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument.  Any Party's facsimile signature and any emailed copy of a Party's signature to this Agreement will be deemed a binding signature of this Agreement by such Party.

12.    Titles and Headings. Titles and headings of the paragraphs and sections of this Agreement are for convenience of reference only and shall not affect the construction of any provision of this Agreement.

13.    Authorization. Each individual executing this Agreement represents and warrants that such individual has been duly authorized to execute and deliver this Agreement in the capacity and for the entity set forth where such individual signs.

The Parties have executed this Settlement Agreement on the respective dates set forth below.

BRANDIE GARDNER                          SLINGSHOT TECHNOLOGY, INC.


*Brandie Gardner*
Brandie Gardner (May 24, 2022 11:24 MDT)                          By: _____
_____

Date: 05/24/2022 _____          Print Name: _____
                                                Title: _____
                                                Date: _____